39202. BROWN et al. v. WETHERINGTON et al.

BELL, Justice.

This is an appeal from an order removing appellants Brown and Hicks from the Monroe County Board of Tax Assessors ("the Board"). There are three seats on the Board.[1] During much of 1981, the Board operated with only two assessors, Newton and Bryant. In January of 1982 Newton's term expired, and on January 21 the county commissioners appointed Brown and Hicks to fill the two

---

[1] "In each county having a population of less than 25,000, according to the United States decennial census of 1970 or any future such census, the board of tax assessors shall consist of not less than three nor more than five members. The number of members to serve on the board shall be determined by the county governing authority." OCGA § 48-5-290 (b) (2) (Code Ann. § 91A-1432).

vacant slots. Bryant resigned on January 31, and his position remained unfilled until February 16. In 1981 Brown had appealed an assessment on his own property. On February 12, 1982, Hicks, accompanied by Brown, inspected the property and the assessment was lowered.

Subsequently, over one hundred freeholders of the county petitioned the superior court pursuant to OCGA § 48-5-296 (Code Ann. § 91A-1439)[2] to remove Brown and Hicks on the grounds that they were "not properly and impartially discharging their duties and [were] discriminating in favor of certain citizens and against others." On March 16 the petition was ordered served upon appellants, and the matter came on for hearing April 7. On that day, appellants filed a motion to dismiss the petition, alleging among other things that the petition was so conclusory that it violated their due process right to notice of the specific charges against them and an opportunity to be heard. The trial court denied the motion, and directed petitioners to make out their case. After they had rested, and after appellants had completed a substantial part of their defense, the court interrupted the proceedings to confer off the record with counsel for the parties. After the conference, he announced that he was going "to narrow the issues a little bit in this case," by giving "some direction to what I think the issues are and then giv[ing] everybody an opportunity to present more evidence on those issues or present legal argument on them." He went on to say that he was most particularly concerned with the fact that the processing of Brown's appeal had created the appearance of impropriety; he then adjourned the hearing. It was recommenced April 23, at which time the court heard additional testimony and arguments. Following that hearing the judge issued a written order with carefully limited findings. First, he found that appellants were not disqualified from holding office, and they were not discriminating in favor of certain citizens or classes of citizens and against others. Further, he found that if Brown had participated in the February 12, 1982, reassessment of his own property, he would have had a conflict of interest. On the other hand, the court said, if Hicks had reassessed the property unilaterally, with Brown merely approving, the reassessment would have been nugatory because official acts of the Board require a majority of the three members, and Hicks had no authority to act alone.

However, the court found that it was unclear whether Hicks had

---

[2] "Whenever by petition to the judge of the superior court any 100 or more freeholders of the county allege that any member of the county board of tax assessors is disqualified or is not properly and impartially discharging his duties or is

acted with Brown or without him. Instead of resolving this factual issue, he ruled that the certainty that one or the other breach of duty had occurred had cast "a cloud of suspicion over the board of tax assessors, and had 'destroy[ed] any credibility this Board of Tax Assessors could ever have.' " He concluded that this appearance of impropriety amounted to a breach of their duty to properly and impartially discharge their duties, and removed them from of fice.

1) In their first enumeration of error, appellants complain that the court erred in denying their motion to dismiss on the ground that there had been no affirmative showing by appellees that the signatures on the petitions were in fact those of Monroe County freeholders. This contention has no merit. "The gist of [removal proceedings] is not how many complainants there are, but the truth or falsity of the charges. A complaint with more than the number of required signatures, sponsored by members of the bar, with nothing to reflect on the genuineness of the signatures or the good faith or competency of the signers, is presumably what it appears to be. If in fact enough of the signatures to reduce the whole to less than [the required number] are fictitious, or if the body of signatures is so saturated with forgery as to constitute a fraud upon the jurisdiction of the court, it is incumbent on the assailant of that jurisdiction to plead and prove such facts." In re Bostwick, 181 NE 905 (43 Ohio App. 76) (1931); 67 CJS 615, Officers, § 177 (a).

2) Appellants also contend that the trial court should have granted their motion to dismiss on the basis that OCGA § 48-5-296 (Code Ann. § 91A-1439) violates the due process clause, Art. I, Sec. 1, Par. 1, of the Georgia Constitution (Code Ann. § 2-101). Specifically, they allege that the statute does not provide for notice and an opportunity to be heard as a matter of right. We do not agree.

---

discriminating in favor of certain citizens or classes of citizens and against others, the judge shall cite the member to appear before him at a time and place to be fixed in the citation, such time to be not less than 20 nor more than 40 days from the date of the presentation of the petition, and to answer to the petition. A copy of the petition shall be attached to the citation and service of the citation may be made by any sheriff, deputy sheriff, or constable of this state. The officer making the service shall serve copies and return the original petition and citation to the clerk of the court as other process is returned. At the time and place fixed in the citation, unless postponed for reasonable cause, the judge shall hear and determine the matter without a jury and shall render such judgment and order as may be right and proper, either dismissing the petition or removing the offending member of the county board of tax assessors from office and declaring a vacancy in the office. If either party to the controversy is dissatisfied with the judgment and order of the court, the party may appeal the issue as in other cases."

" 'It is an established rule that all presumptions are in favor of the constitutionality of an Act of the legislature and that it cannot lawfully be set aside by the court unless the alleged conflict with the Constitution is plain and palpable.' " *Kirton v. Biggers,* 232 Ga. 223, 226 (206 SE2d 33) (1974). " 'A statute complies with constitutional provisions as to due process where it provides for notice and hearing as a matter of right, either in express terms, or, . . . by necessary implication.' " *Id.*

Here, § 48-5-296 (Code Ann. § 91A-1439) provides that whenever 100 or more freeholders allege by petition that a tax assessor "is disqualified or is not properly and impartially discharging his duties or is discriminating in favor of certain citizens or classes of citizens and against others, the judge shall cite the member to appear before him at a time and place to be fixed in the citation, such time to be not less than 20 nor more than 40 days from the date of the presentation of the petition, and to answer to the petition. A copy of the petition shall be attached to the citation and service of the citation may be made by any sheriff, deputy sheriff, or constable of this state." This statute expressly provides for both notice and hearing as a matter of right, and clearly meets our Constitution's requirements of due process.

3) In appellants' third enumeration, they argue that appellees' petition contained only conclusory allegations which were insufficient to put them on notice of the specific charges against them, and that the trial court erred in denying their motion to dismiss on this ground. We agree. Notice of charges against a public official must be " ' "in terms sufficiently explicit as to enable [the public officer] to make an explanation . . ." ' [Cit.] Mere vagaries or generalities are insufficient, and the notice must be 'sufficiently specific and detailed to convey to the [officer] the substantial nature of the charge without requiring speculation on his part as to the precise complaint he must answer.' " *Hughes v. Russell,* 148 Ga. App. 143 (251 SE2d 70) (1978).

Here, the allegations of the petition were no more than restatements of the statutory grounds for removal, and were inadequate to inform appellants of the misconduct with which they were charged. *Hughes v. Russell,* id. Compare *Russell v. Hughes,* 154 Ga. App. 398 (268 SE2d 440) (1980), where on a subsequent appeal of the same case a new, four-page petition alleging "17 separate and distinct duties of the office were breached during the year of 1978" was proper notice. Appellees counter, however, that more specific allegations were brought out in the course of the April 7 hearing, and that the trial court orally summarized them, eliminated those he considered to be without merit, and continued the hearing to allow

both parties to prepare to address the remaining charges. This procedure, petitioners claim, gave appellants reasonable actual notice of the charges against them and an adequate opportunity to be heard.

It is clear that the lack of notice provided by general charges cannot be cured by allegations which are brought out during a hearing. *Hughes v. Russell,* 148 Ga. App., supra. Here, the trial judge heard all the witnesses appellees had planned to present, and apparently most of appellants', before he halted the hearing and attempted to frame the charges as he thought they should have existed ab initio. Up to that point appellants had been forced to speculate as to the precise nature of the complaint they were being forced to answer. Moreover, the trial court's ouster of Brown and Hicks from office was based substantially upon the testimony and arguments adduced on April 7. Therefore, we conclude that there was no fair, reasonable, and timely notice, and the trial court should have granted the motion to dismiss.

Because of our decision in this Division, there is no need to address appellants' remaining enumeration of error.

*Judgment reversed. All the Justices concur, except Marshall, P. J., and Weltner, J., who dissent.*

DECIDED MARCH 9, 1983 —
REHEARING DENIED MARCH 23, 1983.

*Ham, Mills & Freeman, W. Franklin Freeman, Jr.,* for appellants.
*Franklin E. Remick,* for appellees.

HILL, Chief Justice, concurring.

Because of the persuasive power of the dissent, I write to explain my disagreement with it. The dissent would sanction a state of affairs whereby tax assessors can be made to appear and defend themselves at a full-scale hearing against charges too vague to authorize their removal. Such a rule is not in the public interest because it forces public officers to prepare to defend against every attack which conceivably could be raised even though the proceedings may turn out to be frivolous. True, in this case the proceedings were not frivolous and led to the trial court finding a violation of duty sufficient to warrant removal. But the issue here is not whether the evidence supports removal. The issue is whether the assessors were entitled to have their motion to dismiss the petition granted when the petition did not specify the charges against them, or whether they

must appear and defend notwithstanding the fact that the petition is defective as a matter of law. Because we decide not only for the present but for the future as well, I concur in the majority opinion in this case.

WELTNER, Justice, dissenting.

I respectfully dissent, as the statute under which the removal of the tax assessors was accomplished specifies the requirements as to pleading. "Whenever by petition to the judge of the superior court any 100 or more freeholders of the county allege that any member of the county board of tax assessors is disqualified or is not properly and impartially discharging his duties or is discriminating in favor of certain citizens or classes of citizens and against others, the judge shall cite the member to appear. . . ." OCGA § 48-5-296 (Code Ann. § 91A-1439).

That is exactly what more than 100 freeholders of Monroe County did.

On March 16 the petition was ordered served, and a hearing was held three weeks later. As the majority observes, the trial court heard evidence on behalf of the petitioners and from the tax assessors. Thereafter, he summarized the issues as developed by the evidence, and adjourned the hearing, to be recommenced two weeks later, as it was, at which time the court heard additional testimony and arguments.

There is simply nothing wrong with the procedure followed in this case. First, the content of the petition was exactly that described and required by the statute. Second, the petition was served three weeks before the hearing. Third, a full hearing was provided the tax assessors, in which they were represented vigorously and participated fully. Fourth, the court summed up the evidence, announced the areas of interest, narrowed the issues, and provided an additional two weeks for further preparation. Fifth, a second hearing was held, in which the tax assessors again participated.

In spite of this ample opportunity to hear the charges against them, to cross-examine witnesses, and to present evidence of their own with more than ample time to prepare, the majority holds that this was not enough. In so doing, it imposes upon the ordinary citizens, empowered to right perceived wrongs *on their own* through OCGA § 48-5-296 (Code Ann. § 91A-1439), the excess baggage of common law pleading!

In thus eviscerating the plain and simple and honest scheme of the statute, the majority relies upon *Hughes v. Russell,* 148 Ga. App. 143 (251 SE2d 70) (1978). That reliance is misplaced, as there a tax assessor was given but two days' notice of the hearing, with additional

charges served upon him the very night before the hearing.

There are two reasons why *Hughes v. Russell,* supra, is inapposite to this case. The first is factual, as outlined above. The second is more compelling, in that *Hughes v. Russell,* supra, deals not with the recall provision of this case, but with Georgia Laws 1972, p. 1114 (former Ga. Code Ann. § 94-6904) providing: "The members of the board [of tax assessors] may be removed by the appointing authority only for cause shown for the failure to perform the duties or meet the qualifications imposed upon them by law." In interpreting that statute, our Court, in *Kirton v. Biggers,* 232 Ga. 223 (1) (206 SE2d 33) (1974), observed: " 'for cause shown,' implies the necessity of notice and hearing so as to satisfy the constitutional requirements of due process of law."

With that requirement, of course, no one quarrels. It is a requirement which was plainly met under the facts of this case.

The majority opinion concludes a weary cycle: first, the General Assembly empowers the ordinary citizens to protect themselves against the depredations of their public agents, specifying by statute exactly and precisely what must be alleged in order to obtain a public hearing. Second, the trial judge, in a proceeding which is a model of fairness and opportunity to be heard, accords to both the outraged citizens and the tax assessors a full and complete opportunity to be heard, and further to prepare for additional evidence and argument, concluded by a carefully drawn order encompassing findings of fact and conclusions of law. Third, this Court, the final repository of the judicial power of our State, by the resurrection of archaic pleading requirements, takes from the ordinary citizens that which has been given to them by the General Assembly and secured to them by the superior court.

The forms of action *someday* must die. Here was an opportunity to provide for their remains a long-overdue funeral.