A99A1913. MORETON ROLLESTON, JR. LIVING TRUST
v. GLYNN COUNTY BOARD OF TAX ASSESSORS.
(523 SE2d 600)

ELDRIDGE, Judge.

This is the second appearance of this case, which was first heard in *Moreton Rolleston, Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 228 Ga. App. 371 (491 SE2d 812) (1997), Division 2 vacated and remanded, 230 Ga. App. 539 (497 SE2d 274) (1998), pursuant to an order of the Supreme Court, S98C0078, January 5, 1998 (*"Rolleston"*). *Rolleston* held that the trial court had jurisdiction to entertain a declaratory judgment or mandamus action regarding the delay in the hearing of the appeal before the Glynn County Board of Equalization ("BOE"). On remand, the plaintiff did not amend the two pending petitions to add the Glynn County BOE and seek a mandamus nisi against them to compel them to hear and to decide the tax appeals of the Moreton Rolleston, Jr. Living Trust ("Rolleston Trust") regarding reassessments for the years 1995 and 1996. Therefore, the trial court had jurisdiction to decide only the declaratory judgment action against the Glynn County Board of Tax Assessors ("BOTA").

After March 19, 1997, the appeal was forwarded by the Glynn County BOTA to the Glynn County BOE after 180 days expired in January 1997; the Glynn County BOE set a hearing date on the appeal for April 9, 1997, which was rescheduled by Rolleston Trust for June 11, 1997.

By agreement of the BOTA and Rolleston Trust, Civil Action Case Nos. 96-01019 and 97-00422 of the Superior Court of Glynn County were consolidated for hearing on the action for declaratory judgment. The parties filed cross-motions for summary judgment. On January 28, 1999, the trial court entered its order granting to BOTA summary judgment and denied the motion for summary judgment of Rolleston Trust.

Rolleston Trust contends that the trial court erred in granting summary judgment to BOTA. We do not agree.

1. OCGA § 48-5-311 (e) (3) (Ga. L. 1994, pp. 1088, 1090, § 1) provided for automatic referral of a tax appeal from the county board of tax assessors to the county board of equalization after 180 days when the taxpayer has not been notified earlier of a determination by the county tax assessors, except when there has been a county-wide reevaluation or when the tax digest for the current year cannot be

approved by the State Revenue Commissioner pursuant to OCGA § 48-5-304 (a).

OCGA § 48-5-311 (e) (6) (A) and (B) provide that, within 15 days of receipt of notice of appeal, the county board of equalization shall set a hearing date to determine the questions presented, which hearing shall not be more than 30 days and not less than 20 days from notification.

OCGA § 48-5-311 (e) (3) and (6) (A) and (B) are directory statutory provisions rather than mandatory, because a county board of equalization can become so swamped with appeals that it cannot hear all pending cases within such short statutory time periods. Where a statute directs that something be done within a certain time period, without any negative prohibition of later performance of the act, usually the provision as to time is treated as directory only and not as a limitation of authority; where no injury appears to have resulted from the delay, the later performance of the act after the time limitation does not render the act invalid. OCGA § 1-3-1; see generally *Collins v. Birchfield*, 214 Ga. App. 144, 145-147 (447 SE2d 38) (1994); see also *Hopping v. Cobb County Fair Assn.*, 222 Ga. 704, 706 (2) (152 SE2d 356) (1966); *O'Neal v. Spencer*, 203 Ga. 588 (47 SE2d 646) (1948); *Commr. of Ins. v. Stryker*, 218 Ga. App. 716, 719-720 (8) (463 SE2d 163) (1995). The fact that OCGA § 48-5-311 (e) (3) contains an exception for both county-wide reevaluations and for non-approved tax digests, both of which would delay the reassessment and appeal process, indicates that such time periods were intended to be directory only. Since the pending appeal limits the tax bill under the reassessment to 85 percent of the current year's valuation until final determination on appeal, then the taxpayer is not harmed by any delay. See OCGA § 48-5-311 (e) (6) (D) (iii). If the taxpayer brings a mandamus action against either the county board of tax assessors or the county board of equalization, then the trial court may compel an earlier hearing under the facts and circumstances of such case. See *Fulton County Bd. of Tax Assessors v. Jones*, 264 Ga. 828 (452 SE2d 99) (1995); *Rolleston*, supra at 374 (1). Where, as in this case, the county board of equalization, in the exercise of due diligence and with reasonable justification for delay, sets a hearing at the earliest available date, which date falls outside the statutory time period, there has been substantial compliance with the statute. OCGA § 1-3-1 (c); *Barton v. Atkinson*, 228 Ga. 733, 739-740 (1) (187 SE2d 835) (1972).

> [L]anguage contained in a statute which, given its ordinary meaning, commands the doing of a thing within a certain time, when not accompanied by any negative words restraining the doing of the thing afterward, will generally be

construed as merely directory and not as a limitation of authority, and this is especially so where no injury appeared to have resulted from the fact that the thing was done after the time limited by the plain wording of the Act. [Cits.]

Id. at 739 (1). Thus, the failure of the county board of equalization to timely hear the appeal does not nullify the reassessment.

Further, the evidence showed that both exceptions to the application of OCGA § 48-5-311 (e) (3) existed in 1995, i.e., county-wide reevaluation, and in 1996, i.e., the State Revenue Commissioner had not approved the tax digest for 1996 pursuant to OCGA § 48-5-304 (a), so that the statutory time periods would not be applicable in any event.

2. Rolleston Trust contends that OCGA § 48-5-299 (c) acted as a statutory estoppel of the reassessment for 1995 and 1996.

Under the language of OCGA § 48-5-299 (c), the value of real property established by appeal in any year by the board of equalization or superior court by valuation established or decision rendered cannot be changed by the board of tax assessors during the two successive years, unless the taxpayer returns the property at a different valuation or the purpose of the change is not for the sole purpose of changing such valuation established by appeal.

Rolleston Trust returned the property in 1995 and 1996 at the same valuation as prior years, made no changes or improvements in the property, and showed that there had been a judicial determination of valuation in 1996 for the tax years 1992, 1993, and 1994. Thus, if OCGA § 48-5-299 (c) applied, then prior to the board of assessors changing such appeal establishing valuation of such real property, the board of tax assessors had to conduct an investigation into specific factors currently affecting the fair market value of this specific real property, rather than general market forces, which may affect the real estate market in general. Such investigation shall include (1) a visual on-site inspection of the real property to ascertain if there had been (a) additions, (b) deletions, (c) improvements, or (d) the occurrence of other factors that such visual inspection would reveal and that might affect the fair market value of such property, i.e., changes in the surrounding property that a visual inspection would reveal or physical changes in the real property in question, which would affect the fair market value of the property in question; and (2) a review of the legal description, description of the improvements, description of lot size and of area of improvements, and characterization of such property in the files and records of the board of tax assessors to determine any errors. OCGA § 48-5-299 (c). Such other factors do *not* include the general rise in the value of real estate or even surrounding real estate manifested by comparable sales,

because the evaluation on the earlier appeal already would have taken such existence of increase or decrease in surrounding property values into consideration and, as part of equalization, taken such other property values into consideration in arriving at the fair market value of the specific property on appeal. Likewise, a county-wide reassessment would not be such factor, because such county-wide reassessment should have brought surrounding property into equalization with the fair market value already determined on appeal of the subject property. However, county-wide or general area reassessment would satisfy a purpose other than "the sole purpose of changing the valuation established" on appeal, because under such circumstances, equalization and uniformity of value upward or downward with comparable property would be the purpose. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III; *Parsons v. Chatham County Bd. of Commrs.*, 204 Ga. App. 130, 131 (3) (a) (418 SE2d 459) (1992), overruled on other grounds, *Swafford v. Dade County Bd. of Tax Commrs.*, 266 Ga. 646, 647 (1) (469 SE2d 666) (1996). None of these steps was taken by the BOTA prior to the reassessment for either 1995 or 1996.

Rolleston Trust produced evidence that there had been no improvement or change in the condition of the property and that there was a prior tax year judicial determination of the fair market value of the property, so that OCGA § 48-5-299 (c) should become applicable. While OCGA § 48-5-299 (c) may appear to be applicable to these reassessments, such limitation on the BOTA reassessment powers are confined to the statutory appeal process only.

(a) The issues of reassessment, including the validity of a reassessment under OCGA § 48-5-299 (c), shall be raised within the statutory scheme for tax appeals promulgated by the General Assembly by appeal to the county board of equalization or arbitrators. See OCGA § 48-5-311 (e) and (f). The superior court's jurisdiction to decide issues raised by tax appeals is limited to those cases which come through OCGA § 48-5-311 (g).[1] Since valuation and assessment of property for ad valorem purposes are executive branch functions under the separation of powers under the constitution, then the jurisdiction of the superior court in an ad valorem tax case must be by statute, because such court review of executive branch action, absent statutory authority, would be a violation of separation of pow-

---

[1] The Supreme Court of Georgia has promulgated an abstention doctrine for the exercise of equitable jurisdiction in tax appeals, because OCGA § 48-5-311 (e) provides an adequate remedy at law. *City of Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 535 (3) (422 SE2d 651) (1992). However, in rare circumstances where there is no adequate legal remedy, equity may exercise jurisdiction in a tax case. See id.; see also *Tax Assessors of Gordon County v. Chitwood*, 235 Ga. 147, 153-154 (218 SE2d 759) (1975); *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208 (367 SE2d 43) (1988).

ers.[2] An action for declaratory judgment is not a substitute for an appeal under OCGA § 48-5-311 (e), but such is appropriate in this case, not for the purpose of resolving reassessment issues that should come under OCGA § 48-5-311, but to "guide the parties and prevent uncertainty and insecurity with respect to the propriety of some future act or conduct in order not to jeopardize their interests," regarding statutory application and construction. *Rolleston*, supra at 373 (1).

(b) OCGA § 48-5-299 (c) would not be available to Rolleston Trust for the tax year 1995, but such provision would be available for the tax year 1996 if, and only if, an appeal of the 1995 reassessment through OCGA § 48-5-311 (e) establishes an evaluation or OCGA § 48-5-311 (g) results in a judicial decision establishing the 1995 evaluation. This legal consequence results because Ga. L. 1994, pp. 786, 787, § 1, created by amendment OCGA § 48-5-299 (c), and § 2 of the Act states "[t]his Act shall become effective on January 1, 1995, and shall be applicable to all taxable years beginning on or after that date." Thus, the consent judgment for the taxable years 1992, 1993, and 1994 did not constitute the condition precedent for such Code section affecting the reassessments for 1995 and 1996, even though such judicial decision was rendered in 1996, because the plain language of the Act prohibited retroactive application as to cases such as this. See OCGA § 1-3-5; *Mug A Bug Pest Control v. Vester*, 270 Ga. 407, 408 (1) (509 SE2d 925) (1999); *Enger v. Erwin*, 245 Ga. 753 (267 SE2d 25) (1980). Therefore, Rolleston Trust was not entitled to the protection of OCGA § 48-5-299 (c) for a judicial determination setting valuations for years prior to 1995 and its effective date; however, Rolleston Trust would be entitled to such protection as to an appeal establishing the valuation for the tax year 1995, which then would affect 1996 and 1997 as coming under OCGA § 48-5-299 (c).

If there is no decision on appeal establishing value, either by the board of equalization or the superior court, then the condition precedent has not been met. Thus, a settlement with BOTA prior to appeal or after appeal has begun is not a "valuation established or rendered in an appeal" absent a consent judgment entered by the board of equalization, arbitrators, or superior court.

(c) On remand and any subsequent appeal before the BOE as to the tax years 1996 and 1997, BOTA will have an opportunity to raise

---

[2] Art. VII, Sec. I, Par. III of the 1983 Georgia Constitution and OCGA § 48-5-1 et seq. impose upon the executive branch the duty to value, assess, and collect taxes as an executive branch function. Art. I, Sec. II, Par. III of the Georgia Constitution prohibits the violation of separation of powers unless permitted by statute. Thus, judicial review of administrative decisions is limited to the inherent powers of the judiciary or those granted by statute by the legislature. See *Bentley v. Chastain*, 242 Ga. 348, 349-352 (1) (249 SE2d 38) (1978); see also *Dept. of Transp. v. City of Atlanta*, 260 Ga. 699, 702-703 (1) (398 SE2d 567) (1990).

its constitutional attack on OCGA § 48-5-299 (c). BOTA did not raise the constitutional attack in the trial court, and such constitutional attack has not been ruled upon by the trial court.[3] Therefore, this issue must be raised on remand and would come within the jurisdiction of the Supreme Court as a constitutional issue of first impression.

The trial court did not err in granting summary judgment to the Glynn County BOTA and denying it to Rolleston Trust.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 18, 1999 — 

*Moreton Rolleston, Jr.*, for appellant.

*Whelchel, Brown, Readdick & Bumgartner, Terry L. Readdick, W. Gary Moore*, for appellee.

G. Todd Carter, *pro se.*

---

[3] If the determination on appeal established the fair market value for real property for a tax year, then, as a matter of fact and law, such determination of fair market value would be made with due regard to equalization and uniformity with other comparable properties' fair market value at the time of appeal. Thus, a subsequent reassessment during the next two years of such other comparable property would bring such other property into equalization and uniformity with the subject property, which had its fair market value determined on appeal. The property valued on appeal would reflect fair market value, and other property would be brought into equalization and uniformity with its fair market value unless the factors permit a new assessment for purpose of equalization and uniformity.